Mary PRICE et al. v. YELLOW PINE PAPER MILL CO. (No. 1087.) (Court of Civil Appeals of Texas. Beaumont. June 18, 1924. Rehearing Denied July 7, 1924.) Appeal from District Court, Orange County; A. D. Lipscomb, Judge. Howth & O'Fiel and R. A. Wood, all of Beaumont, for appellants. Holland & Holland, of Orange, for appellee.

WALKER, J. The facts of this case are practically identical with the facts on the former appeal. Price v. Yellow Pine Mill Co., 240 S. W. 588. This trial was to the court without a jury and resulted in a judgment for defendant. On the issues of negligence and proximate cause there was a conflict in the evidence, which was resolved by the court in favor of the defendant. Appellants' assignments and propositions only go to the extent of challenging the court's judgment. We believe its conclusions are fully sustained, and as no useful purpose could be served by quoting again from the evidence, or by setting out the conflicting evidence, it is our order that the judgment of the trial court be affirmed, without any additional discussion or review of the facts. Affirmed.

### On Rehearing.

In answer to appellants' motion for conclusions of fact and in lieu of those suggested by them, we here give the trial court's conclusions, approving them as being well supported by the evidence:

"The plaintiff, Mrs. Mary Price, joined by her husband, R. A. Price, sues the defendant

for·damages for personal injury. The alleged cause of action is that defendant, through its agent and general manager, acting for it in his capacity as such, and also under the authority conferred by the necessity resulting from an emergency—the necessity of rendering aid to her husband as an employé injured in the collapse of its furnace—brought her husband home to her in a frightfully bloody and mangled condition, with knowledge that she was in a delicate condition as a prospective mother, so that the resultant shock and consequent miscarriage and impaired health were naturally to be expected. The case has been up to the appellate court and all questions of law settled by the opinion. It only remains to settle the questions of fact. The only one which has given me any great concern is the question of wrongful conduct on the part of defendant's agent and representative in the matter. I am bound to settle this question in accordance with the preponderance of the evidence, the result being worked not of an irreconcilable conflict of testimony. The injured man testified that he was helpless from his injuries and in that condition was placed in the car of defendant's general manager and taken to his front gate and there put out in the sight of his wife, frightfully skinned about the face, shoulder, and back, with broken ribs indicated by his stooped attitude and hand pressed to his side, his breathing impaired, and an ugly cut behind his ear, and his face and clothing covered with blood, notwithstanding a change of clothes after the accident; that Holmes opened the car door, let him out, and drove on, and that he went in the house with the aid of his wife, who assisted him to undress and to bed, and that his wife became ill almost immediately and the miscarriage resulted, the·child being born some three or more months before maturity, after which the wife went through a long course of treatment, leaving her health permanently impaired. He stated that on the way home he told Holmes of the condition of his wife and suggested the probability of such a result, but that Holmes merely asked if his wife was very excitable and did not suggest taking him to another place, nor did he himself suggest it, though it was his wish to go to the home of one of his brothers-in-law. There was no hospital in the town at the time.

"Holmes denies that any mention of the wife's condition was made, and declares that the injured man did not appear to him to be very seriously injured, and that he was not frightful looking at all, but had washed up and changed clothes after the accident and appeared to be only slightly hurt; that Price had been walking about the mill plant for some hours before he proposed to take him home, and that he invited Price to ride home in his car when he himself was ready, either to go home for the day or to make a trip to town, and that Price accepted the invitation and got in the car. Price was corroborated by his wife and daughter as to his frightful appearance, and the doctor's examination showed the broken ribs and probably also some laceration of back and shoulder, though the doctor said there were no severe hurts on his head or face, but merely scratches and not such as to cause profuse bleeding. Several witnesses corroborated ·Holmes as to the appearance of Price, includ-

ing the witness Beck, who was the first called by plaintiff, and the defense witnesses Perry Mahew, Sholars, and Beatty, all employés at the mill, some of whom stated that Price, least injured of the three, was around the mill for quite awhile, standing or sitting, having no appearance of serious injury and no bleeding, and that he conversed about the accident.

"The nature of the accident to Price was not in dispute. Soon after noon he, with Brown and Kennison, two other regular employés of defendant, were working in a newly constructed furnace, still supported by the wooden forms over which its arch was constructed. This furnace was built of large soapstone bricks, each brick weighing 125 pounds and upward and more than 70 in number. The arch collapsed, and\ all three men were held underneath the brick and collapsed forms. Price was the first extricated. The other two were sent home in ambulances promptly after being taken out. Price, when taken out, was able to stand up and walk, at least with assistance. The witness Beck washed his face and led him to a wheelbarrow, where he sat down. Being unable to resume work, he changed from his overalls to his street clothes, and was around the plant for an hour or more before being taken home.

"Taking the undisputed evidence and conflicts together, it seems clear that the evidence preponderates in favor of the inference that to all outward appearances Price did not seem to be in a frightful condition when Holmes drove him home, and even if Holmes knew of the delicate condition of Price's wife it does not necessarily follow, in view of the situation as it appeared to Holmes, that there was any lack of ordinary care involved in taking him home. It might have been otherwise if he had been advised of all the injuries shown to have been suffered and which were afterward apparent to the wife, and event with such knowledge as he had, a very high degree of care, such as a physician would advise in his solicitude for the welfare of a patient in a delicate condition, might have prompted a less shocking method of apprising the wife of the accident, assuming that he actually knew of her delicate condition and the stage of her advancement in pregnancy.

"As to whether notice was actually given to Holmes of the wife's condition, it is a subordinate issue, difficult to determine. Such notice as was claimed to have been given may in fact have been given and forgotten by Holmes. Price, though able to make suggestions on the subject, admitted that he did not follow it up with any suggestion as to where he should be taken, but consented that he should be taken to his home. Had the matter been then deemed by him of sufficient importance, he would have suggested that he be taken to the home of a relative. He testified that he wanted to be taken to the home of a brother-in-law, Elkins, but admitted that he did not mention this fact to Holmes. He probably mentioned his wife's condition to Holmes, but the matter was passed off in such a manner as not to be impressed upon the mind of Holmes as being important to consider under the circumstances.

"On the other issues in the case I have found little difficulty, and therefore do not consider it necessary to discuss the evidence. My findings therefore are as follows:

"(1) Mrs. Price has suffered an injury in the form of a miscarriage due to the nervous shock or shocks resulting from a realization of her husband's condition.

"(2) Assisting in undressing him, she found conditions not apparent to Holmes, which were more shocking than any Holmes knew of.

"(3) To outward appearances such as were noticeable to Holmes, the condition of Price was not so frightful as to indicate to a person of ordinary prudence the probability of an injury such as Mrs. Price suffered.

"(4) Mrs. Price suffered, not only the injury of a miscarriage, but a long subsequent illness, and probably permanent impairment of health to some slight extent.

"(5) If the defendant were liable at all, I should say that a judgment for $3,000 would be reasonable compensation for the injury.

"(6) Holmes was acting for defendant and within the scope of his authority as agent in driving Price home from the mill.

"These findings are made in order that judgment may be rendered by the higher court in case of reversal on appeal. There could be no liability on the part of defendant, in the absence of wrongful conduct on the part of its agent. This agent acted as an ordinarily prudent and humane person would act under like circumstances, and therefore there was nothing legally wrong in his conduct and judgment should be for defendant.

"To these findings and conclusions both parties except. A. D. Lipscomb, Judge Presiding."

In all other respects the motion for rehearing is overruled.